# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00866-CR

**David Mark Isaacson, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT
### NO. CR2009-141, HONORABLE CHARLES R. RAMSAY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found David Mark Isaacson guilty of two counts of aggravated assault on a peace officer. *See* Tex. Penal Code Ann. § 22.02(b)(2)(B) (West 2011). The trial court assessed a sentence of fifteen years in prison. On appeal, Isaacson contends that the trial court erred by failing to instruct the jury on self-defense, justifiable force, and mistake of fact, and that these failures improperly denied his rights to due process and trial by jury. He also contends that the trial court erred by overruling his objection to the admission of evidence concerning an extraneous offense. We will affirm the judgment.

## BACKGROUND

Isaacson and Donna Johnson had shared a house near Canyon Lake for almost a year before the incident at issue here. On the day of the incident, Johnson moved her belongings from Isaacson's house to an apartment in San Antonio. Isaacson and Johnson met at a nearby "icehouse"

at around 6:30 p.m., then Isaacson went home. Isaacson was asleep when Johnson later arrived at the home around 9:30 p.m. with two men. The three companions entered the house and their conversation awakened Isaacson, who did not appreciate having unknown guests. When Isaacson exhibited a handgun while requesting that they depart, the two men left in short order. Johnson testified that Isaacson then aimed the handgun at her for several seconds, lowered the weapon, and returned to his room.

About fifteen minutes later (though Isaacson testified that he believed he had been asleep for about an hour), Comal County sheriff's deputies came to Isaacson's house. Johnson testified that, when she answered the door, the deputies told her they were responding to a report of domestic violence. She acceded to their request that she step out onto the porch and answer questions. Isaacson then opened the door, naked, holding a handgun. The officers testified that Isaacson pointed the gun at each of them and at Johnson for up to a combined 30 seconds, that they each told Isaacson six to eight times to drop his handgun, and that Isaacson then turned around, went back in the house, and closed the door. Johnson contradicted the officers' testimony, stating that she never saw Isaacson pointing his handgun at the officers, that she heard the officers say something to Isaacson but did not hear them repeatedly tell him to drop his weapon, and that Isaacson closed the door after only seven or eight seconds.

Isaacson testified that, before opening the door, he believed that the men on the porch were the men he had ejected from his house earlier, returning to retaliate. He opened the door because he believed that they otherwise would forcibly enter his home or that they might damage his property or car. He admitted he was holding a handgun when he opened the door, but denied

2

pointing it at the officers or Johnson. He agreed that when ordered to drop the gun he instead turned around and closed the door. Isaacson denied pointing a gun at anyone on the evening in question.

## DISCUSSION

Isaacson raises six issues on appeal, three of which relate to instructions he claims should have been given to the jury and two encompassing constitutional claims based upon those instructions not given. Isaacson's sixth issue complains of the admission of evidence concerning his pointing of the gun at Johnson, asserting that the State's failed to provide the notification required for introduction of an extraneous offense.

### Failure to give defensive instructions

Isaacson contends that he was entitled to instructions on the defensive issues of self-defense, justifiable force, and mistake of fact.[1] A person is justified in using force against another when and to the degree the actor reasonably believes the force was immediately necessary to protect the actor against the other's use or attempted use of unlawful force. Tex. Penal Code Ann. § 9.31(a) (West 2011). The actor's belief that the force was immediately necessary is presumed reasonable if the actor knew or had reason to believe that the person against whom the force was used was attempting to enter the actor's occupied habitation unlawfully and with force. *Id.* § 9.31(a)(1).

---

[1] Isaacson discusses sleep automatism as a possible explanation for his behavior, speculating that his having just woken up altered his ability to perceive and think in a way that excuses or justifies his conduct. He did not request an instruction specifically addressed to this theory, however, so it attaches to this appeal, if at all, through the three instructions that are the subject of expressly stated issues on appeal.

3

Defendants are entitled, upon request, to an instruction on every defensive issue raised by the evidence whether that evidence is weak or strong, unimpeached or uncontradicted, and regardless of the credibility of the defense. *Allen v. State*, 253 S.W.3d 260, 267 (Tex. Crim. App. 2008); *see also* Tex. Code Crim. Proc. Ann. art. 36.14 (West 2007). If the defendant objects to the charge error, the judgment will be reversed if he shows some actual (not theoretical) harm calculated to injure his rights. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). We assess the actual degree of harm in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole. *Id.* When determining if the evidence required giving an instruction on a defensive issue, we view the evidence in the light most favorable to the defendant. *See Ferrel v. State*, 55 S.W.3d 586, 591 (Tex. Crim. App. 2001).

**Self-defense instruction**

To raise the issue of self-defense, the accused must admit the conduct charged in the indictment and then offer self-defense as a justification for the action. *Anderson v. State*, 11 S.W.3d 369, 372 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd); *Young v. State*, 991 S.W.2d 835, 839 (Tex. Crim. App. 1999) (discussing defense of necessity as justification). Self-defense is a justification for actions taken and is thus logically inconsistent with a denial of the conduct. *Sanders v. State*, 707 S.W.2d 78, 81 (Tex. Crim. App. 1986); *see Young*, 991 S.W.2d at 838. Admitting the "charged conduct" does not necessarily mean admitting the commission of every statutory element of the offense. *Jackson v. State*, 110 S.W.3d 626, 631 (Tex. App.—Houston [14th Dist.]

4

2003, pet. ref'd). *But see Shaw v. State*, 243 S.W.3d 647, 659 (Tex. Crim. App. 2007).[2] In *Martinez v. State*, a defendant charged with murder admitted to pulling a gun, firing into the air, and having his finger on the trigger when the fatal shot was fired, but denied the element of "intent to kill." 775 S.W.2d 645, 645-47 (Tex. Crim. App. 1989). The Court held that he had admitted committing the offense sufficiently to permit the trial court to consider whether the evidence supported his claim of self-defense enough to warrant giving the instruction. *Id.*

Isaacson contends that he was entitled to an instruction on self-defense. He testified that he thought that his previous visitors had returned to exact revenge after he encouraged them to leave while he held a handgun. He testified that he believed that he needed to defend himself and his property. The State responds that Isaacson failed to adequately admit the offense of assault on a public servant.

We conclude that Isaacson did not sufficiently admit the charged conduct to warrant a self-defense instruction. The trial court described the offense charged as follows:

> A person commits the offense of assault if he intentionally or knowingly threatens another with imminent bodily injury.

---

[2] In *Shaw*, the court of criminal appeals wrote:

> We have said with respect to defenses such as necessity and self defense that when the defensive evidence merely negates the necessary culpable mental state, it will not suffice to entitle the defendant to a defensive instruction. Rather, a defensive instruction is only appropriate when the defendant's defensive evidence essentially admits to every element of the offense including the culpable mental state, but interposes the justification to excuse the otherwise criminal conduct.

*Shaw v. State*, 243 S.W.3d 647, 659 (Tex. Crim. App. 2007).

A person commits the offense of aggravated assault on a public servant, if he commits the offense of assault, as hereinafter defined, to a public servant when he knows the person assaulted is a public servant while the public servant is lawfully discharging an official duty and he uses or exhibits a deadly weapon during the commission of the assault.

In the application paragraph, the trial court specified that the jury must determine whether Isaacson committed the offense by pointing a gun at the officers. Isaacson denied pointing the gun at the deputies, said that he kept the handgun pointed at the floor at all times, denied knowing they were peace officers before opening the door, and testified that "I wasn't threatening anybody. I wasn't hurting anybody." The only aspect of the charged offense he admitted was exhibiting a handgun in the presence of others, which is not necessarily an offense—much less an assaultive one. His admission that he exhibited a weapon did not pass the threshold of admission that requires a court to provide a self-defense instruction to the offense of aggravated assault of a public servant.

### Threats as justifiable force instruction

Isaacson also contends that the trial court should have instructed the jury on the permissibility of threats as justifiable force. A threat of force is justified if the use of force is justified under Chapter 9 of the penal code. *See* Tex. Penal Code Ann. § 9.04 (West 2011). Justifications include public duty, necessity, protection of persons, protection of property, law enforcement, or a special relationship. *See id.* §§ 9.01-9.63. Self-defense is the only one of the justifications listed in Chapter 9 that Isaacson claimed, so he must show at least some evidence raising a question of whether he was entitled to threaten to use force. As we have discussed above, he did not show himself entitled to an instruction on the use of force through self-defense because he did not admit the basic conduct of the assaultive offense. *See Young*, 991 S.W.2d at 839. He

6

admitted only to opening the front door while holding a handgun pointed at the ground. He did not admit to threatening the men on the porch and expressly denied pointing the handgun at anyone, testifying "I wasn't threatening anybody." Isaacson did not show himself entitled to the use of force or an instruction on using the threat of force for self-defense. He has not shown that the trial court erred by refusing to instruct the jury on threat as justifiable force.

### Mistake of fact instruction

Isaacson also contends that the trial court should have instructed the jury on mistake of fact. It is a defense to prosecution that the actor through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for the offense. Tex. Penal Code Ann. § 8.02 (West 2011). Isaacson contends that his mistaken belief regarding the identity and intentions of the men on his porch negated his culpability for the offense of aggravated assault on a public servant.

We need not decide whether the trial court erred as asserted because we conclude that the nature of the offense and the instruction given rendered harmless any such error in the omission of a mistake-of-fact instruction. The failure to give a requested instruction on mistake of fact can be harmless if the instructions given encompass the substance of the defense. *Willis v. State*, 802 S.W.2d 337, 340 (Tex. App.—Dallas 1990, pet. ref'd). The statute at issue in this case defines the offense in part as an assault "against a person the actor knows is a public servant." Tex. Penal Code Ann. § 22.02(b)(2)(B) (West 2011). In addition to the general instruction set out above, the trial court charged the jurors that, to convict, they must find beyond a reasonable doubt that Isaacson knew the men on the porch were public servants, stating as follows:

7

Bearing in mind the foregoing instructions, <u>if you find beyond a reasonable doubt that</u> on or about the 16th day of November, 2008, in the County of Comal and the State of Texas, DAVID MARK ISAACSON, hereinafter styled Defendant, did then and there intentionally or knowingly threaten Tom Byford with imminent bodily injury by pointing a handgun at the said Tom Byford, and did then and there use or exhibit a deadly weapon, to-wit: a handgun, during the commission of said assault, and <u>the defendant did then and there know that the said Tom Byford was then and there a public servant, to-wit: a Comal County Deputy</u>, and that the said Tom Byford was then and there lawfully discharging an official duty, to-wit: investigating a possible criminal situation, as charged in Count 1 the indictment and so answer on verdict form Number 1.

<u>Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the Defendant</u> of the offense of aggravated assault on a peace officer as charged in Count 1 of the indictment and so answer on verdict form Number 1.

(Emphases added.) The trial court instructed the jury similarly regarding the other deputy. Under this instruction, the jury could convict Isaacson only by finding beyond a reasonable doubt that Isaacson threatened the men on the porch while knowing that they were public servants. Because the penal code and the instruction given require that the defendant know that the victim is a public servant—*i.e.* do not allow for the defendant to be mistaken about the victim's occupation—the mistake-of-fact defense would have been redundant in this case. The denial of Isaacson's request for a mistake-of-fact instruction was, if erroneous, harmless.

**Constitutional claims**

Isaacson contends that the trial court's failure to instruct the jury on self-defense, mistake of fact, and justified threat of force denied him a fair and impartial trial and thereby his right to due process and due course of law under the federal and state constitutions. *See* U.S. Const. amend. XIV; Tex. Const. art. I, §§ 13, 19. He also contends that the failure impaired his right to

8

trial by jury under the federal and state constitutions. *See* U.S. Const. amend. VI & XIV; Tex. Const. art. I, § 10, 15. As we have discussed, however, the trial court did not deny Isaacson any instruction that he was entitled to under the statutes and rules governing the jury charge or, if it erred by denying the instruction, the error was harmless. The instructions given required the jury to make a finding of guilt beyond a reasonable doubt on every element of the offense. Even if the failure to give the mistake-of-fact instruction were somehow constitutional error, the fact that the instruction given required the jury to find the absence of mistake of fact beyond a reasonable doubt renders such error, if any, harmless even under the standard for constitutional error. *See* Tex. R. App. P. 44.2(a) (upon finding constitutional error subject to harmless error review, court must reverse unless it finds beyond a reasonable doubt that the error did not contribute to the conviction). We conclude that Isaacson has not shown any deprivation of due process or due course of law, of a fair and impartial trial, or of the right to a trial by jury.

### Admission of evidence

Isaacson asserts that the trial court erred by allowing the State to elicit Johnson's testimony that Isaacson pointed a gun at her before law enforcement officers arrived. Rule of Evidence 404 deems evidence of other crimes, wrongs, or acts admissible to show proof of motive, opportunity, intent, and other factors so long as—upon timely request by the defendant—the State gives reasonable notice of its intention to introduce such evidence in its case-in-chief. Tex. R. Evid. 404(b). The State is not, however, required to give notice of its intention to offer evidence of other crimes, wrongs, or acts arising in the same transaction as the charged offense. *See id.*; *see also Patton v. State*, 25 S.W.3d 387, 392 n.4 (Tex. App.—Austin 2000, pet. ref'd).

9

Whether evidence of an incident aside from the charged offense is admissible as being part of the same transaction is a fact-driven and case-specific determination. It is admissible when "several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction, and full proof by testimony, . . . of any one of them cannot be given without showing the others." *Rogers v. State*, 853 S.W.2d 29, 33 (Tex. Crim. App. 1993) (quoting *Mayes v. State*, 816 S.W.2d 79, 86-87 n.4 (Tex. Crim. App. 1991)). The court of criminal appeals has held that "it has long been the rule in this State that the jury is entitled to know all relevant surrounding facts and circumstances of the charged offense; an offense is not tried in a vacuum." *Moreno v. State*, 721 S.W.2d 295, 301 (Tex. Crim. App. 1986). Same-transaction contextual evidence is admissible only to the extent that it is necessary to the jury's understanding of the offense. *Wyatt v. State*, 23 S.W.3d 18, 25 (Tex. Crim. App. 2000). It is admissible only when the offense would make little or no sense without also bringing in the same-transaction evidence. *Id.* We can reverse the trial court's admission of same-transaction evidence only if it constitutes an abuse of discretion. *Blakeney v. State*, 911 S.W.2d 508, 514 (Tex. App.—Austin 1995, no pet.).

Whether two incidents are part of the same transaction is dependent on facts such as the nature of the incidents, the parties involved, the location, and the passage of time. The analysis is based on a combination of facts and is subject to the court's discretion. For instance, the Tyler Court of Appeals opined that a trial court erred by concluding that an alleged attempted forced entry at a private home occurring twelve hours after a prison escape was part of the same episode as the escape. *Fitzgerald v. State*, 722 S.W.2d 817, 819-20 (Tex. App.—Tyler 1987), *aff'd*, 782 S.W.2d 876, 880 (Tex. Crim. App. 1990). The court of criminal appeals affirmed, concluding that the evidence of the subsequent break-in did not tend to prove any element of the offense of escape from

10

prison. *Fitzgerald*, 782 S.W.2d at 880. On the other hand, the court of criminal appeals held that a trial court considering the murder of a state trooper did not err by admitting evidence that the defendant had killed people thirty minutes earlier using the same gun used to kill the trooper. *Moreno v. State*, 721 S.W.2d 295, 301 (Tex. Crim. App. 1986). The court held that the evidence of the prior murders put the killing of the trooper in context and was "extremely relevant" to showing appellant possessed the murder weapon shortly before the trooper was killed. *Id.*

There is no defined maximum term of hours for events to be part of the same transaction. The Fourteenth Court of Appeals upheld the admission of same-transaction evidence from a police officer who testified regarding the defendant's activities observed over several days before his arrest for possession with intent to deliver a controlled substance. *Moreno v. State*, 195 S.W.3d 321, 327 (Tex. App.—Houston [14th Dist.] 2006, no pet.). The defendant was arrested when, after a traffic stop, he dropped a cigarette box containing heroin. *Id*. at 324. The trial court permitted the police officer's testimony that he had observed the defendant for several days and seen him complete what appeared to be a hand-to-hand transaction involving narcotics. *Id*. at 323. The court of appeals held that the trial court did not abuse its discretion by concluding that testimony regarding the previous apparent drug transaction was "admissible to show the context in which the criminal act occurred, and this behavior was relevant to show that appellant had the intent to deliver." *Id* at 327.

We conclude that the trial court did not abuse its discretion by permitting Johnson to testify that Isaacson pointed his handgun at her before peace officers arrived. The State had given notice that it intended to call Johnson about the confrontation that preceded (and likely precipitated) the arrival of the peace officers, but the State did not tell Isaacson that Johnson intended to testify

11

that Isaacson pointed his handgun at her. The trial court could reasonably have determined that Isaacson's alleged action of pointing a gun at Johnson was part of the same transaction and provided context for the peace officer's response. The trial court could also reasonably have concluded that the testimony bears on the reasonableness of Isaacson's alleged expectation that the men on the porch were the recently evicted visitors rather than peace officers responding to a report of a domestic disturbance. We find no abuse of discretion in the admission of this evidence without the statutory notice being given on these facts.

## CONCLUSION

Finding no reversible error among Isaacson's issues on appeal, we affirm the judgment of conviction.

_____

Jeff Rose, Justice

Before Chief Justice Jones, Justices Pemberton and Rose

Affirmed

Filed: May 10, 2013

Do Not Publish

12